UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Newport News Division)

| | | |
|---|---|---|
| BUILDERS MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:10cv00068-MSD-FBS |
| | ) | |
| PARALLEL DESIGN & DEVELOPMENT LLC, and | ) | formerly: |
| RICKY L. EDMONDS, | ) | Case No. 3:09CV00800 |
| | ) | (Richmond Division) |
| Defendants. | ) | |

## PLAINTIFF BUILDERS MUTUAL INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

### INTRODUCTION

In its ruling on summary judgment, this Court determined that the term "pollutant" in the policy at issue was ambiguous in that it was undefined and, in the Court's view, dictionary definitions showed that the term could be understood to apply both to indoor and outdoor (what the Court termed "traditional") pollution.  The Court's opinion noted that some dictionary definitions of the term "pollutant" offered examples that include the words "environment", "air", or "water", and stated that these definitions "appear to carry with them a "traditional outdoor environmental connotation".  May 13, 2011 Opinion and Order ("Opinion") at 25.  The opinion then stated, "it is certainly plausible that the term could be used in a broader fashion to apply to all environmental harms."  Id.  The Court found that while certain language in the Policy did in fact support such a broader reading, certain exclusion endorsements to the Policy's Commercial General Liability coverage form "militate in the opposite direction."  Id. at 27-28.  Specifically, the Court observed that three such exclusions, for lead, asbestos and silica, "could arguably be redundant" if the Total Pollution Exclusion were found to apply to indoor contaminants.  Id. at 28.  In addition, the Court noted that the term "pollutant" was defined in an unrelated coverage

form (for tools and equipment) that was part of the overall "commercial package policy" that included commercial general liability insurance coverage. Id. at 28-29.

No party had argued to the Court that the term "pollutant" ought to be determined to be ambiguous by reading the Total Pollution Exclusion together with other policy exclusions. As such, the issue was not briefed before the Court. However, a finding of ambiguity based on a comparison of one exclusion to another is contrary to the rule, long recognized in Virginia, that exclusions are to be read *seriatim*. See Nationwide Mut. Ins. Co. v. Wenger, 222 Va. 263, 267, 278 S.E.2d 874, 876 (1981) (rejecting an argument that coverage existed based on conflicting language in two exclusions), citing Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 248, 405 A.2d 788 (1989) ("[E]ach exclusion is meant to be read with the insuring agreement, independently of every other exclusion. The exclusions should be read seriatim, not cumulatively. If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another.").

The Court's decision termed the presence of what appeared to the Court to be potentially overlapping exclusions a "Belt and Suspenders" approach that "do[es] not provide clarity to the meaning of the term [pollutant] in the context of the Total Pollution Exclusion." Opinion at 28 & n.6. But as the Fourth Circuit has quite recently noted, rather than constituting impermissible "bootstrapping", "overlapping exclusions and exceptions [are] plainly intended 'to make certain and doubly certain that the coverage of the policy as a whole is in no event enlarged'." Bryan Bros., Inc. v. Cont'l Cas. Co., 2011 U.S. App. LEXIS 6131, at *11-12 (4th Cir. Mar. 24, 2011),

(quoting Calmer S.S. Corp. v. Scott, 345 U.S. 427, 435 (1953) and citing Nationwide Mut. Ins. Co. v. Wenger, 278 S.E. 2d at 876).

Moreover, assuming *arguendo* that any dictionary definition of "pollutant" or "pollution" cited by the Court could be understood to include, as one possible definition, "outdoor pollution **only**" (and indeed, no single definition cited by the Court so provides), the mere existence of two possible definitions is not sufficient, as a matter of law, to establish ambiguity. Instead, in the context of an exclusion utilizing the adjective "total" in front of the word "exclusion", no legal basis exists whatsoever for a conclusion that the exclusion embraces only one of two possible definitions, absent some language in the Policy indicating such an intent. As a matter of law, that intent must be found either in the language of the exclusion itself, or in the language of the policy independent of any other exclusion.

The Court's finding of an ambiguity based on a comparison of the Total Pollution Exclusion to other policy exclusions constitutes clear error. The Court similarly erred to the extent it determined that the term "pollutant" could be found ambiguous merely because there were multiple dictionary definitions of the term.

## APPLICABLE STANDARD

It appears clear that the Court's May 13, 2011 Opinion and Order is not a final order, given that it provides that the remainder of the case will be held in abeyance until the rights and obligations as to indemnification can be addressed following resolution of the underlying state court case. See Penn-Am. Ins. Co. v. Mapp, 521 F.3d 290, 296 (4th Cir. 2008) ("[I]t is clear that neither the Opinion nor the Judgment terminated the underlying coverage litigation on the merits: The district court decided against Penn-America on the duty to defend issue, but declined to resolve the indemnification issue pending further proceedings in state court."). Consequently,

the order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties" under Fed. R. Civ. P. 54(b). Moore v. Life Ins. Co. of N. Am., 278 Fed. Appx. 238, 241 (4th Cir. 2008); see also Netscape Commns. Corp. v. Valueclick, Inc., 704 F. Supp. 2d 544, 546-47 (E.D. Va. 2010) ("The Fourth Circuit has made clear that where, as here, the entry of partial summary judgment fails to resolve all claims in a suit, Rule 54(d)--not Rule 59(e) or 60(b)--governs a motion for reconsideration.") (citing American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003)).

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d at 514 (citation omitted). Instead, under Rule 54(b), the Court may exercise its inherent authority to reconsider interlocutory orders because such orders may be revised at any time before the Court enters a final judgment. "Accordingly . . . plaintiff is not required to make a showing of extraordinary circumstances." Netscape Commns. Corp. v. Valueclick, Inc., 704 F. Supp. 2d at 546. "Instead, the goal here 'is to reach the correct judgment under law.'" Id. (quoting American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d at 515).

Out of an abundance of caution, however, this motion is also brought pursuant to Fed. R. Civ. P. 59(e), under which a motion to reconsider may be granted to correct a clear error of law. See, e.g., Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (stating that a district court can alter or amend a judgment pursuant to Rule 59(e) to, among other things, "correct a clear error of law").

Because the Court's ambiguity analysis was based on the comparison of exclusions to one another, which is impermissible under Virginia law, reconsideration is appropriate under either Rule 54(b) or Rule 59(e).

## ARGUMENT

I. **UNDER VIRGINIA LAW, EACH EXCLUSION MUST BE READ SEPARATELY, AND ANY OVERLAP BETWEEN POLICY EXCLUSIONS PROVIDES NO BASIS FOR A FINDING OF AMBIGUITY.**

As set forth in Section III below, as a matter of law, multiple dictionary definitions are not alone sufficient to establish ambiguity. Consequently, assuming *arguendo* that two dictionary definitions of "pollutant" existed, including one providing that pollution **only** occurs outdoors, that mere fact alone could not support a determination that the term "pollutant", as used in an endorsement entitled the "total" pollution exclusion, is ambiguous. Instead, a finding of ambiguity must be based on a determination that the language of the exclusion, read in light of the coverage provisions of the policy to which it applies, reasonably supports such a limited understanding of the word "pollutant".

In its Order and Opinion on Summary Judgment, the Court relied upon certain dictionary definitions of the undefined term "pollutant" to conclude that the "ordinary popular meaning of the term 'pollutants' can be understood in more than one way", i.e. only outdoor "traditional" pollution, or indoor and outdoor pollution. Opinion at 25-26. The Court then purported to examine the Policy to see if it could "whittle" those meanings down. The Opinion, however, did not address or analyze the commercial general liability coverage provisions to which the Total Pollution Exclusion applied, or even the remaining language of the Total Pollution Exclusion itself. Instead, it determined that certain language in other exclusions "militate[d] in the opposite direction" of an intent to have the Total Pollution Exclusion apply to indoor pollution. Id. at 27-28.

But utilizing other **exclusions** to find that coverage existed for indoor pollutants under the Total Pollution Exclusion is contrary to the law of Virginia. Instead, in interpreting an exclusion

in an insurance policy, the exclusion must be read together with the provision granting coverage, independent of the provisions or language of any other exclusion. The Court's decision, based instead on a comparison of exclusions (as well as on a definition of "pollutant" in an entirely different coverage form), constitutes a clear error of law.

A.     **Exclusions Are To Be Read With The Insuring Agreement, Independent Of Any Other Exclusion.**

Overlapping exclusions cannot, as a matter of law, be a basis for a finding of ambiguity because to do so would be to utilize an exclusion to create coverage otherwise excluded under another exclusion. See Bryan Bros., Inc. v. Cont'l Cas. Co., supra, 2011 U.S. App. LEXIS 6131, at *11-12 (decided under Virginia law) ("[I]t it is elemental that exclusions and exceptions in an insurance policy cannot expand the scope of agreed coverage."). Rather than constituting some sort of impermissible "bootstrapping" as this Court's opinion suggested, "overlapping exclusions and exceptions [are] plainly intended to make certain and doubly certain that the coverage of the policy as a whole is in no event enlarged." Id. (citation omitted).

The Fourth Circuit in Bryan Bros. cited Stanley Martin Cos., Inc. v. Ohio Cas. Group., 313 F. App'x 609, 613 n.2 (4th Cir. 2009), and Nationwide Mutual Ins. Co. v. Wenger, supra, 222 Va. at 267, for the fundamental proposition that exclusions "could not expand the scope of the insuring clause in a general contractor's liability policy". Bryan Bros., Inc., 2011 U.S. App. LEXIS 6131, at *11-12. In Wenger, the Supreme Court of Virginia rejected an argument that two exclusions conflicted with each other, creating an ambiguity resulting in coverage. See 222 Va. at 267 ("This reasoning has been rejected in at least three of the decisions we have cited previously.").

The decisions cited and relied upon in Wenger stand for the proposition that exclusions are interpreted independently and that ambiguity is not created by virtue of any inconsistency or

redundancy resulting from reading the exclusions together, since absent some express language in the exclusion to the contrary, the language in one exclusion "has no application whatsoever" to that in any other exclusion. See, e.g., Biebel Bros., Inc. v. United States Fid. & Guar. Co., 522 F.2d 1207, 1212 (8th Cir. 1975) (cited with approval in Wenger). One of those decisions, Weedo v. Stone-E-Brick, Inc., supra, is a seminal case in interpreting insurance coverage in construction defect cases.

In Weedo, the insured contended that a certain exclusion, when read in conjunction with two other exclusions, "is confusing in that coverage 'granted' by the former clause is taken away by the latter two," but the Court rejected that argument stating that:

> But this argument too ignores the principle that each exclusion is meant to be read with the insuring agreement, independently of every other exclusion. The exclusions should be read seriatim, not cumulatively. If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another.

81 N.J. at 248 (citation omitted).

This fundamental principle has been repeatedly recognized. See, e.g., Charter Oaks Fire Ins. Co. v. Clayton, 1995 U.S. App. LEXIS 21453, at *13-14 (4th Cir. Aug. 9, 1995) (applying West Virginia law) ("Exclusions in policies of insurance must be read seriatim, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another.") (citing Zandri Constr. Co. v. Firemen's Ins. Co. of Newark, 81 A.D.2d 106, 109, 440 N.Y.S.2d 353 (3d Dep't 1981), aff'd, 54 N.Y.2d 999, 430 N.E.2d 922, 446 N.Y.S.2d 45 (N.Y. 1981)). See also Hillcrest Educ. Ctrs., Inc. v. Cont'l Ins. Co., 3 Mass. L. Rep. 469, 1995 Mass. Super. LEXIS 582, at *7-8 (Mass. Super. Ct. Mar. 28, 1995) ("'Overlap' between two endorsements does not create an ambiguity. . . . The fundamental point is that there

is no 'ambiguity' created simply because two clauses that exclude (in part) different contingencies also exclude (in part) the same contingency. This is what the cases in other jurisdictions say, and in the absence of direct Massachusetts authority, it seems sensible to follow the reasoning of these cases.") (citations omitted); Thornton v. Illinois Founders Ins. Co., 84 Ill. 2d 365, 371 (Ill. 1981) ("It is clear that, under the policy, acts constituting a battery are excluded, as are intentional acts of the insured. The fact that a battery is necessarily an intentional act does not create ambiguity. Merely because these provisions tend to overlap does not render them conflicting.").

Courts have thus held that "even directly conflicting language does not preclude the application of the general principle that an exclusion that clearly eliminates coverage must be applied." UnitedHealth Group v. Hiscox Dedicated Corporate Member, Ltd., 2010 U.S. Dist. LEXIS 10983, at *54-55 (D. Minn. Feb. 9, 2010) (citing Zandri Construction Co., supra, 440 N.Y.S.2d at 355).[1]

**B.     Because Exclusions Are To Be Read Against The Provision Granting Coverage, Independent Of Other Exclusions, No Exclusion May Be Said To Be Inconsistent With Another Exclusion.**

The maxim that the insurance policy is to be interpreted as a whole does not mean that separate exclusions are to be harmonized. See Transp. Ins. Co. v. Valentine Invs., LLC, 205 Fed. Appx. 362, 365-366 (6th Cir. 2006) ("GuideOne's other arguments, that the two exclusions are really a single exclusion, that they should be read as a harmonious whole, and that the hostile

---

[1]     See also Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869, 874-75 (Ky. 2002) ("[Unlike] an ambiguity between the insuring agreement and a single exclusion"[,] [t]he present case, by contrast, involves an alleged ambiguity between two exclusions. The difference is significant. **There can be no ambiguity between two exclusions because, again, exclusions do not grant coverage and they are considered independently of each other.**") (emphasis added), citing cases including Weedo v. Stone-E-Brick, Inc., supra, 81 N.J. at 248 (referencing "the basic principle that exclusion clauses subtract from coverage rather than grant it").

fire exception would be negated by the district court's interpretation, are all contravened by Michigan law. * * * [Instead,] **each individual exclusion refers, not to the other exclusions, but to the hazards insured against by the insurance contract. Accordingly, exclusions are to be read with the insuring agreement, independently of every other exclusion.**") (emphasis added) (citations and internal punctuation omitted). See also Century I Joint Venture v. United States Fidelity & Guaranty Co., 63 Md. App. 545, 558-59 (Md. Ct. Spec. App. 1985) ("Each exclusion **must be read against the provision granting coverage, rather than against the hazards referred to in other exclusions**. In other words, each exclusion must be read independently of the other exclusions.") (citing Weedo, supra, 405 A.2d at 795) (emphasis added); Engineered Products, Inc. v. Aetna Casualty & Surety Co., 295 S.C. 375, 378 (S.C. Ct. App. 1988) ("The flaw in Engineered Products' argument that Exclusion (a) renders the policy ambiguous is its apparent belief that exclusions should be read together and cumulatively. The settled rule, however, is just the opposite.") (citing Weedo, supra, 405 A.2d 788).

As recently explained in Wenzel v. Nautilus Ins. Co.,

> . . . in Weedo, the Court also stated: **each exclusion is meant to be read with the insuring agreement, independently of every other exclusion. The exclusions should be read seriatim, not cumulatively.** If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. **There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another.** Id. at 248 (quotation omitted.)

2011 U.S. Dist. LEXIS 41809, at *8-9 (D.N.J. Apr. 18, 2011) (emphasis added).

**C.     Rather Than Constituting Impermissible "Bootstrapping", Redundancy Among Exclusions Is Necessary And Appropriate.**

This Court determined that a broad interpretation of the Total Pollution Exclusion would render other exclusions for lead, silica and asbestos redundant.  Opinion at 28 ("If the definition

of 'pollutant' in the applicable policy were [sic] to sweep as broadly as Builders Mutual contends, these additional exclusions could arguably be redundant because damage caused by [lead, silica and asbestos] would ostensibly already fall within the Total Pollution Exclusion.").

But if inconsistency or directly conflicting language in two exclusions provides no basis for a finding of ambiguity, it should come as no surprise that ambiguity cannot be based on an apparent redundancy between two exclusions.  As the Fourth Circuit did in Bryan Bros., supra, courts have uniformly rejected the proposition that "redundant" exclusions indicate ambiguity. See Tradin Organics USA, Inc. v. Md. Cas. Co., 325 Fed. Appx. 10, 11 (2d Cir. 2009) ("Since [an] exclusion clearly applied to bar coverage … it was irrelevant whether [another] exclusion -- and/or its exception -- also applied") (citing Zandri Constr. Co., supra, 440 N.Y.S.2d at 356). See also American Nat'l Gen. Ins. Co. v. Ryan, 274 F.3d 319, 329 (5th Cir. 2001) ("Although we recognize the possible overlap of the intentional acts exclusion and the threshold requirement of an occurrence, we may not vary the unambiguous terms of the Policy.").

In Pettit v. Erie Ins. Exch., 349 Md. 777, 790 (Md. 1998), the Maryland Court of Appeals rejected an argument that redundant exclusions suggested ambiguity.  The Court explained:

> Petitioner's contract construction argument is that Erie's failure to use a "sexual molestation" exclusion in the policies issued to Kowalski reflects an intent to provide coverage for sexual molestation. **Such an inference requires as its predicate the notion that a "sexual molestation" exception--if such conduct were already prohibited under a general provision excluding all intentional torts--would be impermissibly redundant.**

> This inference does not flow logically. As the Court of Special Appeals noted in this case, **"liability insurance policies often contain both broad exclusions and specific exclusions that overlap."** Pettit, 117 Md. App. at 221, 699 A.2d at 555; see also Sparks, 63 Md. App. at 743, 493 A.2d at 1112 (holding that an intended damages exclusion was in pari materia with language in the policy defining an "occurrence" under the policy as an "accident.").

> Many factors underlie the commercial reality that insurance policies often contain specific exclusions for conduct also excluded under a more general provision.

> Among these is the policy that ambiguous insurance contracts are to be construed against the insurer. Insurance companies have an interest in drafting policies with as few ambiguities as possible; therefore, it is likely that they would include "redundant" exclusions so as to reduce the possibility of doubt that the activity in question is excluded. See 9 G.J. Couch, Couch on Insurance § 127.28, at 127-60 (3d ed. 1997) (The purpose of a specific policy provision addressing sexual claims is to make the intentions of the parties "plainer.").

349 Md. At 790.[2] (emphasis added).

In Parma Seed v. General Ins. Co., Parma Seed argued that a products exclusion clause must be ambiguous "because if the clause is read so broadly as to exclude coverage in the present case then the 'L-144' endorsement is superfluous." 496 P.2d 281, 285 (Idaho 1972). The Court held that this "contention carries little weight", stating that:

> Even if the 'L-144' endorsement was unnecessary, the language of the products liability exclusion is not rendered ambiguous. In any event, it appears that the 'L-144' endorsement was added to this insurance agreement to be certain that the appellant would not be liable for nongerminating seeds. It is commonplace in insurance contracts for particular endorsements, designed to ensure exclusion of specific areas of potential liability, to overlap with broader exclusionary clauses found elsewhere in the contracts. The extra measure of caution represented by 'L-144' in this case does not compel us to narrow the construction we apply to the products liability exclusion."

Id.

As the Sixth Circuit recently observed in TMW Enters. v. Fed. Ins. Co., the interpretive canon that "courts must avoid interpreting contracts to contain superfluous words" "is one among many tools for dealing with ambiguity, not a tool for creating ambiguity in the first place." 619 F.3d 574, 578 (6th Cir. 2010). As the Court pointed out,

> But even if we choose to label this type of drafting a form of redundancy, which we do not think it is, that label surely is not a fatal one when it comes to insurance contracts, including this contract, where redundancies abound. In just this one provision of the 80-page insurance contract, there are at least three truly

---

[2]    See also Carney v. Assurance Co. of Am., 2005 U.S. Dist. LEXIS 6640, at *4 n.4 (D. Md. Apr. 19, 2005) ("It is to be noted that plaintiffs' contention that the exception clause is redundant itself is unpersuasive. Such exceptions appear to be routine in the industry . . . .").

redundant phrases, as opposed to logically redundant phrases: (1) "loss or damage"; (2) "caused by or resulting from"; and (3) "faulty, inadequate or defective." As in so many insurance contracts, iteration is afoot throughout--from an exclusion for "war and military action" to one for "fraudulent, dishonest or criminal acts or omissions" to one for flooding of "lakes, reservoirs, ponds, brooks, rivers, streams, harbors, oceans or any other body of water or watercourse" to numerous others.

Not just insurance lawyers frequently say two (or more) things when one will do or say two things as a way of emphasizing one point. Courts themselves frequently apply "arbitrary and capricious" review in administrative law cases. See, e.g., F.C.C. v. Fox Television Stations, Inc.,   U.S.   , 129 S. Ct. 1800, 1811, 173 L. Ed. 2d 738 (2009). But no one, I suspect, has ever seen agency action that was "arbitrary" but not "capricious." Emblazoned on the front of the United States Supreme Court are the words "Equal Justice Under Law." But who would defend something as "Justice Under Law" if it did not apply equally to all citizens? See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig., 491 F.3d 638, 646 (7th Cir. 2007) (Posner, J.) ("The full name of the duty, both in the complaint and in the cases—'duty of good faith and fair dealing'--could be thought ominously open-ended. But the full name is merely what is called a 'doublet,' a form of redundancy in which lawyers delight, as in 'cease and desist' and 'free and clear.'" (quoting Bryan A. Garner, The Redbook: A Manual on Legal Style § 11.2(f) (2d ed. 2006))).

Id. at 577-78.

> **D.**     **Consequently, Even Assuming *Arguendo* That Interpreting The Word "Pollutant" In The Total Pollution Exclusion To Apply To Indoor Pollution Might Also Cause The Exclusion To Encompass Indoor Contamination By Asbestos, Silica Or Lead, No Resulting "Redundancy" Can Support A Finding Of Ambiguity.**

The existence of separate exclusions for asbestos, silica and lead does not render the

Total Pollution Exclusion ambiguous. Consistent with the authority cited above, courts have

rejected ambiguity arguments based on an asserted "redundancy" in the specific context of

pollution exclusions. See RLI Ins. Co. v. Gonzalez, 2011 U.S. App. LEXIS 472, at *6-7 (5th

Cir. Jan. 7, 2011) ("Next, appellants argue that a separate Asbestos Exclusion in the Umbrella

Policy creates an inference that silica dust claims are not included by general Pollution

Exclusion. **But 'superfluous exceptions are commonplace' in insurance contracts and 'have**

the effect merely of mak[ing] assurance doubly sure.' Williamson v. J.C. Penney Ins. Co., 226

F.3d 408, 411 (5th Cir. 2000). Even if the Pollution Exclusion covers the same claims as the

Asbestos Exclusion, this does not raise an inference that the Pollution Exclusion does not cover

silica dust claims. **The existence of a separate exclusion for asbestos does not create**

**ambiguity in the Pollution Exclusion."**) (emphasis added). <u>See also</u> <u>George's Inc. v. Allianz</u>

<u>Global Risks US Ins. Co.</u>, 596 F.3d 989, 994 (8th Cir. 2010) ("Alternatively, George's maintains

that the existence of both the animal exclusion and the work in progress exclusion creates an

ambiguity regarding which exclusion should apply. This argument mistakenly assumes that

there is a conflict whenever multiple exclusions may apply to the same claim. The presence of

two or more potentially overlapping exclusions, however, is unremarkable."); <u>Constitution State</u>

<u>Ins. Co. v. Iso-Tex</u>, 61 F.3d 405, 409 (5th Cir. 1995) ("Iso-Tex argues, however, that the

pollution exclusion is patently ambiguous when the 'waste' in question is nuclear waste, in part

because nuclear operations are covered by a separate exclusion in this and other similar policies.

Iso-Tex cites no authority or rationale for the distinction. Given the strict rules of construction

against a drafter, an insurance provider would be motivated to draft overlapping and redundant

clauses which exclude coverage for the same conduct. The existence of various 'nuclear

exclusions' in a policy does not make them less comprehensive nor require that the words

'pollution' or 'waste' be given other than their ordinary meanings.").

Moreover, to the extent the Court's opinion can be read to mean that if the Total

Pollution Exclusion was interpreted broadly, this would render the Policy's asbestos, lead and

silica exclusions superfluous, this is clearly not correct. Notwithstanding the Court's

characterization of one alternative reading of the Total Pollution Exclusion as "broad", it is in at

least one key respect narrower than the asbestos, silica and lead exclusions, because none of

those endorsements limit the exclusions' applicability to **dispersal, discharge or release** of asbestos, silica and lead.  See In re Asbestos Prods. Liab. Litig., 1997 U.S. Dist. LEXIS 13383, at *24 (E.D. La. Aug. 29, 1997) ("Exposure to asbestos predicated on the acts of 'removal' and 'abatement' appear to the court to be of a different nature than a dispersal or release of asbestos. To read the absolute pollution exclusion as an asbestos exposure exclusion would enlarge its scope beyond its plain terms.").[3]

While the Court stated that it sought to determine whether two permissible meanings of the word "pollutant" could be "whittle[d] down to only those that would be reasonable in the context of the entire policy," the Court did not read the language of the Total Pollution Exclusion against the language of the policy's coverage provisions.  Instead, the Court read the language of the Total Pollution Exclusion against the language of other exclusions to coverage.  In doing so, the Court committed a clear error of law.

---

[3]     See also Hillcrest Educ. Ctrs., Inc. v. Cont'l Ins. Co., 3 Mass. L. Rep. 469, 1995 Mass. Super. LEXIS 582, at *6-7 (Mass. Super. Ct. 1995) ("Both Hillcrest's reading of the policy and its analysis are flawed. The two endorsements overlap; neither is subsumed by the other. The MAAPS2 Endorsement, although narrower in certain respects, is broader in others than the Care Facility Endorsement. * * * 'Overlap' between two endorsements does not create an ambiguity. Specifically, the MAAPS2 exclusion . . . does not create or evidence any ambiguity in the more general Care Facility exclusion. Although Massachusetts courts have not addressed this issue directly, courts in similar situations have declined to nullify unambiguous exclusions for the sole reason that another arguably narrower exclusion in the policy did not also exclude the claim."); Fidelity Nat'l Title Ins. Co. v. OHIC Ins. Co., 275 Ga. App. 55, 58-59 (Ga. Ct. App. 2005) ("The fact that the Policy contains additional exclusionary clauses that qualify or limit the exclusions for the more general misconduct described in those particular clauses does not diminish the fact that the exclusion for the misconduct described in Exclusion 4 is unqualified. These other separate clauses do not refer to or attempt in any way to limit the absolute language in Exclusion 4; they simply focus on a type of excluded misconduct that is broader than that described in Exclusion 4.  As stated persuasively by the New Jersey Supreme Court: '[E]ach exclusion is meant to be read with the insuring agreement, independently of every other exclusion.'") (quoting Weedo, supra).

## II.   AMBIGUITY MAY NOT BE BASED ON A COMPARISON OF THE TOTAL POLLUTION EXCLUSION TO A COMPLETELY DIFFERENT COVERAGE FORM FOR A COMPLETELY DIFFERENT KIND OF INSURANCE.

The Court similarly erred in reading the definition of "pollutant" in an entirely separate and independent coverage form as supporting a finding of an ambiguity.   The Builders Mutual policy is a "Commercial Package Policy", meaning that it includes, in one overall policy, certain other types of insurance in addition to commercial general liability insurance.   Coverage under each of these different types of insurance is set forth in independent "coverage parts"; and policy endorsements each indicate to which of the specific coverage forms the endorsements apply. The Total Pollution Exclusion endorsement **only** "modifies insurance provided" under the COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The Court found an indication of ambiguity in another coverage part, providing insurance for contractors tools and equipment.   See Opinion at 28-29.   Coverage under this insurance is set forth in a separate coverage form, which in turn contains its own exclusions and definitions, including a definition of "pollutant" identical to that in exclusion "f" of the commercial general liability insurance form.   The Court's opinion does not indicate in what specific way the presence of a broad definition of "pollutant" in the contractors tools and equipment coverage form suggests that a permissible interpretation of "pollutant" in the Total Pollution Exclusion would be that the exclusion only applies to outdoor pollutants.   See id. at 29.

Nevertheless, under the same reasoning as set forth above with regard to the asbestos, silica, and lead exclusions, language contained in an entirely different coverage form having nothing to do with the commercial general liability insurance coverage provided by the Policy provides no support for the Court's finding of ambiguity.   As the Court explained in J & S Enterprises, Inc. v. Continental Cas. Co.,

Here, the format of the policy clearly segregated the different coverages into different sections of the contract. Each of the covered categories in turn listed exemptions which limited the extent of the coverage within that category. Nevertheless, **plaintiffs argue that the pollution exclusion in one section of the contract can be applied to the contamination exclusion in an entirely different section. We disagree** and conclude that, if, as here, two exemption clauses are entirely independent they are not to be construed together. G. Couch, Cyclopedia of Insurance Law § 15.48 (2d ed. 1984); J. Appleman & J. Appleman, Insurance Law & Practice § 7383 (1976); see also Ryan v. Harrison, supra; Greer v. Northwestern National Insurance Co., 36 Wash. App. 330, 674 P.2d 1257 (1984).

825 P.2d 1020, 1023-24 (Colo. Ct. App. 1991) (emphasis added).

## III.    MULTIPLE DICTIONARY DEFINITIONS ALONE DO NOT SUPPORT A FINDING OF AN AMBIGUITY.

In its Order and Opinion on Summary Judgment, the Court determined that two "ordinary popular" meanings of the term "pollutant" existed based on certain dictionary definitions, and then proceeded to review certain Policy exclusions to see if they gave a clear indication that the Policy in fact intended one meaning or the other.  See Opinion at 24-30.  What the Court did in essence was to find an ambiguity based solely on the existence of multiple dictionary definitions.

### A.    The Fact That The Term "Pollutant" Can Include Outdoor Pollution Does Not Mean The Term Is Ambiguous.

The fact that the term "pollutant" has more than one definition is insufficient to establish ambiguity.  See Twichel v. MIC Gen. Ins. Corp., 676 N.W.2d 616, 622 (Mich. 2004) ("A word is not ambiguous merely because different dictionary definitions exist. The word 'owned' is not ambiguous as used in the policy. Rather, we conclude that the plain and ordinary meaning of that word **would include** circumstances, as in the case before us, in which an agreement for sale is reached, a portion of the purchase price is paid, and control and dominion of the vehicle are relinquished to the purchaser.") (emphasis added).  The fact that the term "pollutant" can include outdoor pollution is no support at all for the proposition that the exclusion can reasonably be read

as <u>only including</u> outdoor pollution – instead, it supports nothing other than the proposition that the plain and ordinary meaning of the word encompasses both definitions. <u>See also</u> <u>Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.</u>, 40 F.3d 146, 152 (7th Cir. 1994) ("We agree that 'sudden' connotes an unexpected and unintended event or occurrence. However, 'sudden' can also mean 'abrupt' or 'quick,' and we believe that in the context of the pollution exclusion clause, 'sudden' must be construed as meaning both 'unexpected' and 'abrupt.'").

### B.      No Definition of "Pollutant" Limits The Term Only To Outdoor Pollution.

The Court concluded, however, that one "ordinary popular" meaning of the word "pollutant" was "only traditional environmental harms" (i.e., only **outdoor** pollution). Opinion at 26. However, none of the four dictionary definitions that the Court read as "carrying with them a traditional outdoor environmental connotation", Opinion at 25-26, actually contained any limiting language. Indeed, none used the word "outdoor".

The first dictionary cited by the Court, the "Merriam-Webster Online Dictionary", does not define "pollutant" or "pollution" as limited to outdoor environmental pollution. <u>See</u> Opinion at 24-25. Instead, it offers as an "example" of a pollutant, something that has to be "filtered" "out of the water". <u>Id.</u> at 26. The website the Court apparently reviewed also includes a thesaurus and an encyclopedia. Using the latter quickly takes one to the on-line version of Encyclopedia Britannica. Encyclopedia Britannica's article on "air pollution" includes an entire sub-section on "indoor air pollution" including "off gassing" from "building products". http://www.britannica.com/EBchecked/topic/10772/air-pollution (last visited June 7, 2011). This would hardly support of a view that that one "ordinary popular" meaning of the word "pollutant" was "only traditional [i.e., outdoor] environmental harms".

The other dictionaries cited by the Court, Black's Law Dictionary and Oxford English Dictionary Online, simply list air, soil and water contamination, or "the environment", without any indication that air pollution has to occur outdoors.  See Opinion at 25.

Putting aside for the moment that none of those examples states that the definition **only** applies to pollution of the outdoor environment (if this were the case, would not the definition have said so?), even the examples themselves are not so limited, **because the word "environment" is not so limited.**  See A-One Oil, Inc. v. Massachusetts Bay Insurance Co., 250 A.D.2d 633, 672 N.Y.S.2d 423 (N.Y. App. Div. 1998) (bodily injury and property damage arising out of indoor asbestos fibers) ("The fact that asbestos was released in the basement of the Wolff residence does not bring the claim outside the scope of the exclusion, as **indoor air contamination can constitute environmental pollution.**") (emphasis added).[4]

The Court in essence determined that because dictionaries sometimes offer examples of the term "pollutant" as encompassing environmental contamination, and because environmental contamination encompasses outdoor air contamination, the term "pollutant" is ambiguous, unless something in the Policy actually says or indicates that the term pollutant might include indoor air contamination.  See Opinion at p. 27.

---

[4]     See also Du-Mont Ventilating Co. v. Department of Revenue, 52 Ill. App. 3d 59, 61-62 (Ill. App. Ct. 1977) ("The defendant contends . . . that the ordinary meaning of the word 'atmosphere' requires reading of the word 'atmosphere' in the Environmental Protection Act not to include air inside buildings. * * * [T]he dictionary definition of atmosphere supports the conclusion that indoor air is a part of the atmosphere. Atmosphere means: 'a: a gaseous mass enveloping a heavenly body * * * b: the whole mass of air surrounding the earth c: a gaseous envelope or medium * * *.'   Only one gaseous mass surrounds the earth. There are not two separate masses of gas depending upon whether you are indoors or outdoors. The gases, of which the atmosphere consists, are flowing and pass from indoors to out of doors, whether through windows, doors, cracks in walls or other, more sophisticated, ventilating systems. As a result, indoor pollution necessarily, pollutes the atmosphere.").

But because "[a] word is not ambiguous merely because different dictionary definitions exist," AGK Holdings, Inc. v. Essex Ins. Co., 142 F. App'x 889, 892 (6th Cir. 2005) ("the 'plain and ordinary meaning' of a word could include several situations with different factual scenarios"), multiple definitions do not become equally plausible, "ordinary popular meanings", unless and until they are found to be so in the context of the Policy and the facts to which the Policy is being applied.

### C.    For Purposes of Ambiguity, Each Meaning Must Be Reasonable In the Context of the Policy's Language and Purpose.

While dictionaries are often of great assistance in determining whether there is a single commonly understood meaning of a word, dictionaries are of "no significant help" in determining whether a true ambiguity exists.  See Gulf Metals Indus., Inc. v. Chicago Ins. Co., 993 S.W.2d 800 (Tex. Ct. App. 1999).  There the Court wrote:

> While dictionaries may be helpful to the extent they set forth the ordinary, usual meaning of words, they provide an inadequate test for ambiguity. To allow the existence of more than one dictionary definition to be the *sine qua non* of ambiguity would eliminate contextual analysis of contractual terms; any time a definition appeared in a dictionary of whatever credibility or usage, that definition could be said to be "reasonable" and thus render many, if not most, words ambiguous. Dictionaries define words in the abstract, while courts must determine the meaning of terms in a particular context, here a specific insurance policy. Dictionary definitions alone can therefore be accorded little weight in determining ambiguity. The fact that different people reading different dictionary definitions of the same word might reach different interpretations of that word does not make each reading and interpretation reasonable. **We agree with those courts holding that such definitions provide no significant help in determining whether a term has two reasonable meanings.** See New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1193-94 (3rd Cir. 1991); Cyprus Plateau Mining Corp. v. Commonwealth Ins. Co., 972 F. Supp. 1379, 1384-85 (D. Utah 1997); In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litigation, 870 F. Supp. 1293, 1348 (E.D. Pa. 1992), aff'd on other grounds, 15 F.3d 1249 (3rd Cir.), cert. denied, 513 U.S. 915, 115 S. Ct. 291, 130 L. Ed. 2d 206 (1994).

Id. at 805-06 (emphasis added).

Nor is the fact that a word can be defined **broadly** sufficient to establish ambiguity. Westport Ins. Corp. v. Coffman, U.S. Dist. LEXIS 6302, at *16 (S.D. Ohio Jan. 29, 2009) ("[M]ultiple or broad meanings do not necessarily create ambiguity.") (quoting Nat'l Union Ins. Co. of Pittsburgh v.. Holmes & Graven, 23 F. Supp. 2d 1057, 1070 (D. Minn. 1998)). **Instead, no ambiguity can exist where the contamination of indoor air with harmful chemical gases fits within every dictionary definition offered by the parties or cited by the Court.** See Seattle Monorail Servs. v. Affiliated FM Ins. Co., 2005 U.S. Dist. LEXIS 37493, at *3-5 (W.D. Wash. Sept. 23, 2005) ("Plaintiff's dictionary use results in a broad 'definition, 'something made up of a number of parts assembled in a particular pattern,' which Plaintiff argues clearly applies to monorail trains. Webster's II New Revised Dictionary (1996). Defendant narrows the definition considerably to 'something built or constructed, as a building, bridge or dam.' Random House Unabridged Dictionary (1997).  * * *  The Court does not find that the term 'structure' is ambiguous. **Both the definition cited by Plaintiff and that cited by Defendant are capable of encompassing one of Plaintiff's trains within its language."**) (emphasis added).

This is especially true when the purported "breadth" of the term "pollutant" (i.e., whether it might encompass indoor as well as outdoor pollutants) is considered in the context in which the word is used (i.e., in the context of the language of the Total Pollution Exclusion itself) and in the context of the type of policy it is, i.e., a policy of commercial general liability insurance issued to a homebuilder.  See Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1143 (10th Cir. 2008) ("Dictionary definitions can shed only partial light on the reasonable understanding of an insured with regard to words in the context of a particular insurance policy. In particular, construction of a potentially ambiguous term in an insurance-policy provision requires consideration of the purpose of the provision."), citing Branscum v. Am. Cmty. Mut. Ins. Co.,

984 P.2d 675, 678 (Colo. Ct. App. 1999) (a court should consider the purpose of a policy in construing a policy term).

The purpose of this Policy was to insure a company that built homes.  To say that the word "pollution" – especially when preceded by the adjective "total" – would not be commonly understood by a homebuilder to include indoor air pollution, is to ignore an increasingly obvious reality in which lawsuits abound over "sick building syndrome" and a host of indoor contaminants.  See, e.g., West Am. Ins. Co. v. Band & Desenberg, 925 F. Supp. 758, 761 n.1 (M.D. Fla. 1996) ("It is generally recognized that 'sick building syndrome' is caused by a variety of contaminants in the indoor air that give rise to indoor air pollution.  See Andrew Kopon, Jr. & Joseph C. Gergits, Indoor Environment: Regulatory Developments and Emerging Standards of Care, 62 Def. Couns. J. 47 (January 1995), and sources cited therein. See also, Mackey v. TKCC, Inc., 134 Ore. App. 121, 894 P.2d 1200 (Or. App. 1995) discussing sick building syndrome as caused by indoor air pollution)."), aff'd, 138 F.3d 1428 (1998).[5]

Indeed, if one leaves the confines of the four dictionary references cited by the Court, it quickly becomes apparent that **the terms "pollution" and "pollutant" are as frequently associated with the word "indoor" as not.**  Consider:

 * There are **dictionaries of phrases** as well as words.  The phrase "indoor air pollution" is described thusly in Wikipedia:

> Air pollution is the introduction of chemicals, particulate matter, or biological materials that cause harm or discomfort to humans or other living organisms, or cause damage to the natural environment or built environment, into the

---

[5] See also STUCK INSIDE THESE FOUR WALLS: RECOGNITION OF SICK BUILDING SYNDROME HAS LAID THE FOUNDATION TO RAISE TOXIC TORT LITIGATION TO NEW HEIGHTS, 26 Tex. Tech L. Rev. 1041, 1057  (1995) (republished in Legal Handbook for Architects, Engineers and Contractors, Clark Boardman Callaghan, 1996) ("Typically, new buildings have higher concentrations of VOCs [volatile organic compounds] due to releases from construction materials and new furnishings . . . .").

> atmosphere. * * * **Indoor air pollution** and urban air quality are listed as two of the world's worst pollution problems in the 2008 Blacksmith Institute World's Worst Polluted Places report.

http://en.wikipedia.org/wiki/Air_pollution (last visited June 7, 2011) (emphasis added).

Another internet site, Science-Dictionary.com, defines the phrase "indoor air pollution" as "the pollution inside a building, caused by something such as smoke or carbon monoxide". http://www.science-dictionary.com/definition/indoor-air-pollution.html (last visited June 7, 2011).

* There are also **dictionaries of abbreviations and acronyms**. One, The American Heritage® Abbreviations Dictionary (Third Edition. Houghton Mifflin Company, 2005), lists "IAP" as an acronym for "indoor air pollution". http://dictionary.reference.com/browse/iap (last visited June 7, 2011).

* There are dictionaries that offer **examples of usages of words in a sentence**. One online dictionary offers the following use of the word "pollutant": "these degradation processes produce gaseous and particulate **pollutants** into the **indoor air**." http://sentence.yourdictionary.com/pollutant  (last visited June 7, 2011).

* There are **thesauruses** as well as dictionaries.[6] One, Webster's New World Roget's A-Z Thesaurus, describes "common environmental pollutants" as including "carbon monoxide" and "tobacco smoke", which are of course typically indoor pollutants. http://thesaurus.yourdictionary.com/pollution (last visited June 7, 2011).

* There are a host of government regulatory websites and publications that define or describe "indoor air pollution".  See, e.g., the California EPA's Air Resource Board site, which

---

[6]  A thesaurus is an "acceptable method of determining the plain, ordinary meaning of a word in an insurance policy."  Philadelphia Indem. Ins. Co. v. Healy, 156 Fed. Appx. 472, 475 (3d Cir. 2005) (citations omitted).

defines the phrase as "Air pollutants that occur within buildings or other enclosed spaces, as opposed to those occurring in outdoor, or ambient air.  Some examples of indoor air pollutants are nitrogen oxides, smoke, asbestos, formaldehyde and carbon monoxide." http://www.arb.ca.gov/html/gloss.htm#I (last visited June 7, 2011).

　　　*    Innumerable court opinions discuss statutes, regulations, and publications pertaining to indoor air pollution. See, e.g., Avery v. Powell, 695 F. Supp. 632, 638 (D.N.H. 1988) (referencing Godish, Indoor Air Pollution Air Pollution in Offices and Other Non-Residential Buildings, 48 J. of Envtl. Health 190-95 (No. 4, 1986)); John's Heating Serv. v. Lamb, 46 P.3d 1024, 1035 (Alaska 2002) (referencing the "Indoor Air Pollution" guide sponsored in part by the United States Environmental Protection Agency); Flue-Cured Tobacco Coop. Stabilization Corp. v. United States EPA, 313 F.3d 852, 855 (4th Cir. 2002) ("The Radon Act was based on Congress's finding that 'exposure to naturally occurring radon and indoor air pollutants poses public health risks' and that 'federal radon and indoor air pollutant research programs are fragmented and underfunded,' and thus a need existed for the development of an 'information base concerning exposure to radon and indoor air pollutants.'") (citation omitted); Houston v. Williams, 2007 U.S. Dist. LEXIS 97851, at *1-2 n.1 (M.D. Fla. Dec. 19, 2007) (referencing Arnold W. Reitze, Jr. & Sheryl-Lynn Carof, The Legal Control of Indoor Air Pollution, 25 B.C. Envtl. Aff. L. Rev. 247, 250 (Winter 1998)); A.S. & W.S. v. Trumbull Bd. of Educ., 414 F. Supp. 2d 152, 181 (D. Conn. 2006) (referencing R.A. Etzel, Indoor Air Pollutants in Homes and Schools, 48 Pediatric Clinics of North America 1153 (2001)).

　　　Given the above, it should be clear that the words "pollution" or "pollutant" are paired with the word "indoor" to a degree that is pervasive.

Thus, in order for an ambiguity to exist, the language of the Exclusion, read together with the coverage provisions of the Policy, must reasonably support a reading that would limit the exclusion's applicability to outdoor pollution.   Not a single word in the exclusion, or in the policy, offers one iota of such support.

### D.     The Word "Pollutant" Is Not Ambiguous When Read In The Context Of The Entire Text Of The Total Pollution Exclusion.

As set forth above, the mere presence of multiple dictionary definitions is insufficient to establish an ambiguity.  Assuming *arguendo* that the dictionary definitions cited by the Court in fact constitute multiple definitions, the first step in reviewing the Policy to determine whether the term "pollutant" is in fact ambiguous is to read the Total Pollution Exclusion in its entirety.

"Labels and headings given to the respective sections of the contract and the placement of the sections of the contract are pertinent to the inquiry of coverage . . . ."  Scarborough v. Travelers Ins. Co., 718 F.2d 702, 708 (5th Cir. 1983).  See also Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1059 (9th Cir. 2009) ("the title of a statute and the heading of a section may help "shed light on some ambiguous word or phrase") (quoting Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 528-29, 67 S. Ct. 1387, 91 L. Ed. 1646 (1947)).  Specifically, the title of an exclusion can give context to a term so as to take away any doubt as to its meaning.  See Hartford Ins. Co. v. Occidental Fire & Casualty Co., 908 F.2d 235, 239 (7th Cir. 1990) ("Even if we found paragraph (C) of the endorsement ambiguous, the context of the entire exclusion resolves any doubts about its meaning and applicability in this case. The Truckmen endorsement is also called, in the policy, 'insurance for non-trucking use.' That appellation suggests the scope of the policy coverage: it applies only when the truck is being used for purposes unrelated to trucking.").

Here, the exclusion is expressly titled, "***Total*** Pollution Exclusion." "The meaning of the word 'total' is nose-face plain." Green v. Fund Asset Mgmt., L.P., 147 F. Supp. 2d 318, 329 (D.N.J. 2001). "In Webster's Dictionary the word 'total' is defined as being all, the whole of, pertaining to or referring to the whole of a thing as distinguished from partial." Travelers Ins. Co. v. Carter, 298 S.W.2d 231, 234 (Tex. Civ. App. 1956). See also South Macomb Disposal Auth. v. Department Of Envtl. Quality, 2006 Mich. App. Lexis 3010 (Mich. Ct. App. Oct. 17, 2006) ("'Total' means 'constituting or comprising the whole; entire . . . .' Random House Webster's College Dictionary (1997), p 1359."); Friarsgate, Inc. v. First Fed. Sav. & Loan Ass'n, 317 S.C. 452, 457 (S.C. Ct. App. 1995) (The word "total" means, "in its plain, ordinary and popular sense", means "1. Constituting or pertaining to the whole; entire. 2. Complete; utter; absolute.") (citing THE AMERICAN HERITAGE DICTIONARY 1280 (2d ed. 1985)).

The word "total" is synonymous with "absolute." Green v. Fund Asset Mgmt., L.P., supra, 147 F. Supp. 2d at 329. The word "absolute" has been held to be unambiguous so as to exclude all pollutants:

> The second endorsement unequivocally and unambiguously is entitled "Contamination and Pollution Endorsement Absolute." Emphasis added. The American Heritage Dictionary defines "absolute" as "perfect in quality or nature; complete. . . . Not limited by restrictions or exceptions; unconditional. . . . Unrelated to and independent of anything else . . . ." Black's Law Dictionary parrots this definition by defining "absolute" as "Complete; perfect; final; without any condition or incumbrance; . . . without relation to or dependence on other things or persons." With these definitions in mind, it is difficult for the court to define absolute in terms other than all encompassing and superseding all others. To provide life to Clean Harbors' contention that both endorsements are intended to be read together would give dramatic and inappropriate construction to the definition of absolute.

United States v. Clean Harbors of Natick, 1995 U.S. Dist. LEXIS 22505 (D.N.H. Jan. 17, 1995)

The Court's opinion acknowledges that a plausible meaning of the terms "pollutant" and "pollution" could encompass indoor pollution. But the **only** plausible meaning of the word

"pollution" when modified by the word "total" in the title is that the word necessarily includes indoor pollution. See W3i Mobile, LLC v. Westchester Fire Ins. Co., 632 F.3d 432, 437 (8th Cir. 2011) ("Because a word has more than one meaning does not mean it is ambiguous. The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise. In the Westchester products exclusion, 'in any way' modifies 'involving.' As we have recently determined, the word 'any' when read naturally has an expansive meaning. We find the 'in any way' language incorporates all reasonable definitions of the word 'involving' . . . .") (internal citations and punctuation omitted).[7]

## CONCLUSION

In its Opinion and Order on Summary Judgment, the Court determined that the language of the Policy militated against a reading of the word "pollutant" as including indoor pollution, because to do so would introduce a possible redundancy based on a comparison of multiple policy exclusions. This was clear error, under the case law cited above. Instead, one common understanding of the term "pollutant" includes indoor pollution; and the language of the Total Pollution Exclusion shows that it was intended to encompass all reasonable meanings of the term.

For the reasons stated herein, Plaintiff Builders Mutual Insurance Company respectfully requests that the Court reconsider its ruling.

---

[7]   See also Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 701 (2d Cir. 1998) ("The Endorsement is entitled 'Workers' Compensation, Certain Residence Employees.' The use of the term 'certain' immediately alerts the average person that some but not all residence employees will be covered under the Endorsement."); Ginett v. Computer Task Group, 962 F.2d 1085, 1100 (2d Cir. 1992) ("CTG's argument, that the addition of the word 'total' to 'compensation' renders the term 'total compensation' ambiguous, is frivolous. 'Total' has a common meaning, and since the agreement provides that Ginett's 'compensation' was composed of the three elements listed above, Ginett's 'total compensation' must necessarily be the total of all three elements, not only the first and the third.").

Date:   June 10, 2011                    Respectfully submitted,

                                         BUILDERS MUTUAL INSURANCE COMPANY
                                         By Counsel


SANDS ANDERSON PC


            /s/
_____
Danny M. Howell (VSB No. 30352)
Mikhael D. Charnoff  (VSB No. 43929)
Courtney S. Schorr     (VSB No. 65971)
SANDS ANDERSON PC
1497 Chain Bridge Road, Suite 202
McLean, VA  22101
Telephone: (703) 893-3600
Facsimile: (703) 893-8484
*Counsel for Builders Mutual Insurance Company*

and

Jeffrey H. Geiger (VSB No. 40163)
SANDS ANDERSON PC
1111 East Main Street, 24th Floor
P. O. Box 1998
Richmond, Virginia 23218-1998)
Telephone: (804) 783-7248
Facsimile:  (804) 783-7291
E-mail:  jgeiger@sandsanderson.com
*Counsel for Builders Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Richard G. Collins, Esquire
Gilbert A. Bartlett, Esquire
Gilberg A. Bartlett PC
809 Richmond Rd
Williamsburg, VA 23185
(757) 229-1910
Fax: (757) 229-7323
Email: rcollins@gilbertabartlett.com
*Counsel for Parallel Design & Development LLC*

and

Richard James Serpe, Esquire
Law Offices of Richard J. Serpe, P. C.
580 E Main St
Suite 310
Norfolk, VA 23510
(757) 233-0009
Fax: (757) 233-0455
Email: rserpe@serpefirm.com

Jeffrey Arnold Breit
John Webb Drescher
Michael F. Imprevento
Breit Drescher & Imprevento PC
1000 Dominion Tower
999 Waterside Dr.
Norfolk, VA 23510-3320
(757)670-3884
Fax: (757) 299-8035
Email: jbreit@bdbmail.com
jdrescher@breitdrescher.com
mimprevento@ breitdrescher.com

Frederick Steven Longer
Levin Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
(215) 592-1500

Fax: (215)592-4663
Email: flonger@lfsblaw.com

*Counsel for Ricky L. Edmonds*

_____/s/_____
Danny M. Howell  (VSB No. 30352)
dhowell@sandsanderson.com
Sands Anderson PC
1497 Chain Bridge Road, Suite 202
McLean, VA 22101
703-893-3600 Phone
703-893-8484 Fax